HIRSCHFELD v. CHERRY.

LANDLORD AND TENANT—SUBLEASE—OIL STATION—WASH RACK AND OIL PIT—SURRENDER.

After execution of agreement whereby sublessee, in consideration of $200 and release from payment of past due rent then owing his landlord, turned over possession of removable building used as wash rack and oil pit which sublessee had erected at cost of $1,755 at an oil station and lessee within a few days surrendered to its landlord the entire premises, including above building, sublessee is *held*, not entitled to remove such building.

Appeal from Wayne; Parker (James S.), J., pre-siding. Submitted April 4, 1935. (Docket No. 59, Calendar No. 38,119.) Decided June 3, 1935.

Bill by Philip Hirschfeld against Frank G. Cherry for an injunction restraining defendant from tearing down a building. From decree for defendant, plaintiff appeals. Reversed.

*Arthur J. Hass,* for plaintiff.

*Schmalzriedt, Frye, Granse & Frye (James F. Murray,* of counsel), for defendant.

EDWARD M. SHARPE, J. Plaintiff, Hirschfeld, was the owner of certain premises located at the southwest corner of East Jefferson and St. Clair avenues in Detroit, Michigan, and in September, 1929, leased them to Newell Brothers for the purpose of operating a gas station. The lease provided for cancellation by either party by giving 30 days' notice. The pertinent paragraphs of the lease read as follows:

"Third: It is understood and agreed, however, that this lease may be canceled by either party giving 30 days' notice in writing to the other.

"Fourth: It is understood that the lessee may improve the said building and/or add to the equipment of the gas station and the appurtenances thereto, but that upon the surrender of the said premises and the termination of this lease, all such improvements and personal property shall belong to, and be the property of the lessor, excepting however such personal property and equipment added by the lessee which may be readily detached without damage or injury to the remaining property."

In July, 1931, defendant, Cherry, entered into a verbal sublease with Newell Brothers of a portion of

the premises on a month to month basis at a rental of $25 per month; and, in pursuance of this verbal lease, Cherry proceeded to erect a building to be used for a wash rack. In the erection of the building, steel columns 8 feet 6 inches high were used, the same being bolted to steel plates at the bottom and cement poured over the plates to keep the column upright. The roof was made of tin or galvanized iron and the sides were inclosed with unmortared brick. The cost of the building was $1,755. The record also discloses that plaintiff loaned defendant $57 in the name of an attorney to install lights in the building and to secure the payment of the loan took a chattel mortgage on the equipment used by defendant. During the latter part of the year 1931, Newell Brothers, being desirous of surrendering their lease with plaintiff and knowing that such surrender depended upon the surrender and cancellation of the oral lease between Newell Brothers and Cherry, entered into an agreement with Cherry on February 1, 1932, as follows:

"Exhibit 2.

"The tenant does hereby surrender to the landlord on the date above mentioned, and the landlord does hereby accept the surrender on said date, the premises hereinbefore mentioned, and all right, title and interest thereunder.

"The tenant does hereby immediately and forthwith deliver up to the landlord possession of the buildings and land on said above mentioned premises, and the landlord does hereby accept the possession of said buildings and premises.

"The landlord, in consideration of such surrender, does hereby agree to pay to the tenant the sum of $200, 60 days from the date hereof; $100, the receipt whereof is hereby acknowledged, and the further

sum of $100 as evidenced by a promissory note bearing even date herewith, which the tenant agrees to accept in full discharge of the liability of the landlord and in full satisfaction and settlement of all his right, title and interest in and to said premises, and the landlord does hereby release the tenant from all past due rents under the tenancy heretofore created.

"In witness whereof, we have hereunto set our hands and seals this 1st day of February, A. D. 1932.

"NEWELL BROS., INC.

(Sgd.)    By ALFRED H. NEWELL,

(Sgd.)    FRANK F. CHERRY."

And on February 2, 1932, Newell Brothers executed the following agreement:

"Exhibit 3.

"To Philip Hirschfeld:

"Be it remembered that on the 4th day of January, A. D. 1932, under and by virtue of a notice to terminate lease, we delivered up to you possession of the premises known as the southwest corner of East Jefferson and St. Clair avenues, city of Detroit, Wayne county, Michigan, known and described as:

"That part of the lot, together with the improvements thereon, at the southwest corner of East Jefferson and St. Clair avenues, having a frontage of approximately sixty feet on East Jefferson and a depth of approximately one hundred feet.

"And we do further deliver up to you, on the day and date above written, possession of the buildings and land on said described property heretofore used as a wash rack and oil pit.

"NEWELL BROTHERS, INC.,

By ALFRED H. NEWELL,

President."

Newell Brothers vacated the premises on February 4, 1932, and plaintiff leased the same together with the wash rack building to one Barrett who took

possession. Defendant continued in possession paying the same rent to Barrett until August, 1932, when he vacated because his rent was raised from $25 to $75 per month. Thereupon defendant, Cherry, in attempting to remove the building, was prevented by a temporary injunction. The trial court found in favor of defendant from which decree plaintiff appeals.

The question involved is the determination of the ownership of the wash rack. The defendant contends that the building being portable and never having been disposed of, he is now entitled to its possession together with the right to remove the same from its present location, while the plaintiff contends that the nature of the building and the manner in which it is fastened to the ground indicates that it is not movable property, and further that the title to the property passed to plaintiff by reason of exhibits 2 and 3 heretofore referred to in this opinion.

We find that defendant, Cherry, erected the wash rack at a cost of $1,755, subleased from Newell Brothers on a month to month basis, and for a consideration of $200 executed the agreement known as exhibit 2. The question may be narrowed down to what did defendant part with by the execution of this instrument? In the first place, it was the cancellation of the lease, which could have been cancelled upon giving to defendant a 30-day notice. In the second place, Cherry was released from the payment of all past due rents then owing to his landlord, Newell Brothers, Inc.; and in the third place, Cherry surrendered all his right, title and interest in said premises and also delivered possession of the buildings to Newell Brothers. Exhibit 3, executed the day following the execution of exhibit 2, is a sur-

render to plaintiff by Newell Brothers, Inc., of the premises together with the wash rack and oil pit.

The decree of the lower court is reversed, with costs to plaintiff.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.